**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| KIMCO BIRMINGHAM, L.P., ) | |
|     Petitioner, ) | |
| ) | |
| v. ) | No. 3:07-CV-1642-O |
| ) | |
| THIRD CREEK, LLC, et al., ) | |
|     Respondents and Cross-Movant. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Before the Court for recommendation are Petitioner, Kimco Birmingham, L.P.'s ("Petitioner" or "Kimco") Amended Petition to Vacate Final Arbitration Award, filed November 9, 2007, and Respondents and Cross-Movants Third Creek, LLC, Mathias D. Renner Family, LLP, and Kenneth J. Weber Family, LLCs' (collectively "Respondents") Motion to Confirm Final Arbitration Award, filed October 11, 2007. This dispute concerns a Final Arbitration Award issued in Dallas, Texas on September 11, 2007, and further detailed in a "reasoned award" issued on October 3, 2007, by an Arbitration Panel ("the Panel") acting under the auspices of the Judicial Arbitration and Mediation Service ("JAMS"). This case was referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636 and an order of the Court. The findings, conclusions, and recommendation of the United States Magistrate Judge follow:

**Parties, Jurisdiction, and Venue**

1.     Petitioner Kimco is a limited partnership formed and existing under the laws of the state of Alabama.

2.     Respondent Third Creek, L.L.C., is a limited liability company which engages in real estate investment and operation of commercial properties. It is formed and existing under the laws of the state of Missouri. The members of Third Creek, LLC are Matthias D. Renner, Linda G. Renner, Thomas R. Green, Jr. and Katherine A. Weber. The Renners are citizens of Missouri. Thomas R. Green, Jr. is a citizen of

Florida, and Katherine A. Weber is a citizen of Illinois.

3. Respondent Matthias D. Renner Family, L.L.C,. is a limited liability company formed and existing under the laws of the state of Missouri.

4. Respondent Kenneth J. Weber Family, L.L.C., is a limited liability company formed and existing under the laws of the state of Missouri.

Respondents removed this case from the 44th Judicial District Court of Dallas County, Texas. Complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,0000. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and venue is proper here.

## Factual Background

This proceeding arises from the arbitration of a dispute that arose from Respondents' purchase of the Inverness Heights Shopping Center in Hoover, Alabama ("the Property") from Petitioner in June 2004 pursuant to a Purchase and Sales Agreement ("PSA") and a letter agreement between Respondents and Petitioner that became effective in late January 2005 ("the Letter Agreement"). When the sale was closed pursuant to the PSA, Petitioner had not yet completed its construction of the shopping center and the large earth slope that comprised the eastern border of the Property ("the Slope"). The Slope was a problem before the closing, and money was placed in escrow to address the problem, but the efforts were unsuccessful. After the closing, the Slope continued to erode, and Hurricane Ivan exacerbated the erosion. According to Respondents, the Slope destabilized and gave way or broke loose below the surface in several sections, resulting in "Slope Failure." Petitioner treated the failure essentially as a surface erosion problem. Respondents claimed that Petitioner failed and refused to fulfill its contractual obligations to repair and provide long-term stability to the failed Slope. Petitioner responded that it had no contractual duty to repair

2

and stabilize the Slope because it was a design problem. When negotiations to resolve the dispute failed, Respondents filed an Arbitration Demand.

## Arbitration Procedure

The parties agreed in an earlier arbitration that if future arbitrations arose, each side would select and designate one arbitrator to serve on a three-arbitrator. The two party-designated arbitrators would then meet and select a third arbitrator to complete the Panel. (Resp't Mot. to Confirm (doc#5), Ex. D.) The parties agreed that after the three arbitrators had been impaneled, no *ex parte* communications would be permitted with any of the three arbitrators on the Panel. (*Id*., Ex. G.) The parties agreed regarding the procedural terms of the arbitration. (*Id*.)

The parties fully briefed their claims and defenses and presented them to the Panel at a two-day evidentiary hearing in Dallas, Texas on July 20 and 21, 2007. The Panel permitted oral argument and post-hearing briefing. On August 15, 2007, a majority of the Panel issued an Interim Award of actual damages to Respondents in the amount of $3,003,000. The Panel reserved the amount of legal fees and costs and directed the parties to confer in efforts to work out a stipulation. No agreement was reached. On September 11, 2007, the Panel issued its Final Award, granting Respondents a total of $578,541.24 in legal fees and arbitrator compensation, in addition to the actual damages set out in the Interim Award. In addition, in the event of an unsuccessful appeal of the award to a state or federal court, the Panel awarded an additional $50,000 as additional reasonable attorneys' fees. In the event of an unsuccessful appeal to an appellate court of a decision by any court to which the Award is appealed, the Panel awarded an additional $35,000 as reasonable attorney fees; and in the event of an unsuccessful appeal of an appellate decision to a court of higher resort, the Panel awarded an additional amount of $20,000 as reasonable attorneys' fees.

On October 3, 2007, pursuant to Petitioner's demand, the Panel issued the Final Award of Arbitrators (Amended) ("Award"), providing the underlying reasoning for the Award. (Resp't Reply (doc. #17), Ex. A.) Petitioner filed its Petition to Vacate the Final Award in Dallas County, Texas, on September 20, 2007. Respondents removed the action to this Court.

## The Parties' Claims

Petitioner raises two statutory grounds for vacatur of the Award:

(1) The arbitrators exceeded their powers under the Federal and Texas Arbitration Acts; 9 U.S.C. § 10(a)(4); TEX. CIV. PRAC. & REM. CODE § 171.0088 (a)(3)(a); and

(2) There was "evident partiality or corruption" evidenced by one of the arbitrators; 9 U.S.C. § 10(a)(2); TEX. CIV. PRAC. & REM. CODE §171.088(a)(2)(a).

(Amend. Pet. at 3-4.) Additionally, Petitioner asserts that the Award exhibits a manifest disregard for the law applicable to the parties' dispute, thus requiring that the Award be vacated under federal common law.

Respondents deny Petitioners' allegations and move to confirm the Arbitration Award pursuant to 9 U.S.C. §§ 6 and 9. (Resp't Mot. (doc. #5) at 3.) Respondents urge that there is neither a statutory nor a non-statutory basis to vacate the award, which is in all respects a valid and conforming award under the parties' agreement to arbitrate and JAMS Rules, to the extent that such rules are applicable. (*Id*. at 13-14.)

## Standard of Review

Under the Federal Arbitration Act ("FAA"), the statutory bases for vacatur set forth in §§ 10 and 11 are the sole grounds for judicial review of an award. *Hall Street Assocs., L.L.C. v. Mattel, Inc*., --- U.S. ----, 128 S. Ct. 1396, 1400, 170 L. Ed.2d 254 (2008) (deciding that parties could not contract for a scope of judicial review greater than that called for in the FAA). The FAA

provides four statutory grounds for vacating an award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; [and]
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Petitioner seeks vacatur on the statutory ground that the arbitrators exceeded their powers under the FAA. The question is "whether the award, however arrived at, is rationally inferable from the contract." *Am. Laser Vision v. Laser Vision*, 487 F.3d 255, 259 (5th Cir. 2007) (internal quotation marks and citations omitted). The district court resolves all doubts in favor of the arbitration award when deciding whether an arbitration panel exceeded its authority. *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320-21 (5th Cir. 1994) (citing *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 213 (5th Cir. 1993)). A reviewing court is not limited to the panel's explanation of the award, but looks to the result reached. *Id.* at 1325. The court will not second-guess multiple, implicit findings and conclusions underpinning the award nor will it decide if the award was free from error. *Am. Laser Vision*, 487 F.3d at 260; *see also Apache Bohai Corp.v. Texaco China*, 480 F.3d 397, 405 (5th Cir. 2007) (" '[I]t is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different than his.' ") (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598-99 (1960)).

To promote the federal policy favoring arbitration, "the factual and legal accuracy of arbitrators' findings will not be reviewed." *Amalgamated Meat Cutters and Butcher Workmen of North America, Dist. Local No. 540 v. Neuhoff Bros. Packers, Inc.*, 481 F.2d 817, 819 (5th Cir. 1973).

Petitioner also seeks vacatur on the basis that there was "evident partiality or corruption" evidenced by one of the arbitrators.[1] A "party alleging evident partiality must establish specific facts which indicate improper motives on the part of the [arbitrator]. The appearance of impropriety, standing alone, is insufficient." *Sheet Metal Workers Int'l Ass'n Local Union 420 v. Kinney Air Conditioning Co.,* 756 F.2d 742, 746 (9th Cir. 1985)). In *Bernstein Seawell & Kove v. Bosarge,* 813 F.2d 726, 732 (5th Cir. 1987), the court noted that "[e]vident partiality means more than a mere appearance of bias."[2] *Id.* (quoting *Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 173 (2d Cir. 1984)).

---

[1] "[T]he United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration ... where there was evident partiality or corruption in the arbitrators . . . ." 9 U.S.C. § 10(a)(2).

[2] An award may not be vacated because of a trivial or insubstantial prior relationship between the arbitrator and the parties to the proceeding. *See, e.g., Montez v. Prudential Sec., Inc.,* 260 F.3d 980, 982, 984 (8th Cir. 2001) (no vacatur; as general counsel for a company, arbitrator had employed sixty-eight attorneys, paying them $2.8 million in fees, from the law firm representing one of the parties in the arbitration); *Al-Harbi v. Citibank, N.A.,* 85 F.3d 680, 682 (D.C. Cir. 1996) (no vacatur where arbitrator's former law firm represented party to the arbitration on unrelated matters); *Lifecare Int'l, Inc. v. CD Med., Inc.,* 68 F.3d 429, 432-34 & n. 3 (11th Cir. 1995) (no vacatur where arbitrator had memorialized prior scheduling dispute with an attorney from the law firm representing one of the parties and mentioned it eighteen months later at the arbitration; arbitrator also failed to disclose that he became "of counsel" to a law firm the prevailing party had interviewed for the purpose of obtaining representation in the instant dispute and that had reviewed the contract involved in the case two years prior; court found this, at best, showed a "remote, uncertain, and speculative partiality"); *Health Servs. Mgmt. Corp. v. Hughes,* 975 F.2d 1253, 1255, 1264 (7th Cir. 1992) (arbitrator knew one of the parties, had worked in the same office with him twenty years ago, and saw him about once a year since; the court found this relationship "minimal" and insufficient to vacate). Courts have granted vacatur in the following circumstances. *See, e.g., Commonwealth Coatings,* 393 U.S. 145, 146 (1968) (business relationship between arbitrator and party was "repeated and significant"; the party to the arbitration was one of the arbitrator's "regular

Awarding vacatur based on a mere appearance of bias for nondisclosure would seriously jeopardize the finality of arbitration. *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 284-85 (5th Cir. 2007). Losing parties would have an incentive to conduct intensive, after-the-fact investigations to discover the most trivial of relationships, most of which they likely would not have objected to if disclosure had been made. *Id.* Expensive satellite litigation over nondisclosure would proliferate. *Id.* "The standards for judicial intervention are therefore narrowly drawn to assure the basic integrity of the arbitration process without meddling in it." *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 679 (7th Cir. 1983).

Finally, Petitioner seeks vacatur on the basis of the judicial doctrine of "manifest disregard" of the applicable law. The Supreme Court's decision in *Hall Street* calls into question whether the "manifest disregard" standard is a ground for vacatur separate from the statutory grounds for vacatur under the FAA. *Hall Street Assocs.*, 128 S. Ct. at 1400. The *Hall Street* decision emphasizes the limited review afforded to arbitration decisions, concluding that [i]nstead of fighting the text [of the FAA], it makes more sense to see the three provisions, §§ 9-11, as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway. It noted that "[a]ny other reading opens the door to the full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process,' *Kyocera Corp. v. Prudential-Bache*

---

customers"; "the relationship even went so far as to include the rendering of services on the very projects involved in this lawsuit"); *Olson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 51 F.3d 157, 159 (8th Cir. 1995) (arbitrator was a high-ranking officer in a company that had a substantial ongoing business relationship with one of the parties); *Schmitz v. Zilveti,* 20 F.3d 1043, 1044 (9th Cir. 1994) (arbitrator's law firm represented parent company of a party for decades, including within two years of the arbitration).

7

*Trade Services*, 341 F.3d 987, 998 (9th Cir. 2003); *cf. Ethyl Corp. v. United Steelworkers of Am.*, 768 F.2d 180, 184 (7th Cir. 1985), and bring arbitration theory to grief in post-arbitration disputes." *Id*. at 1405. Nevertheless, the Supreme Court left open the door to "manifest disregard" review based on state statutory or common law, "where judicial review of different scope is arguable." *Id*. at 1406. The Fifth Circuit Court of Appeals recently described the extremely deferential review given to arbitrators' decisions in a way that is not inconsistent with *Hall Street*:

> Judicial review of an arbitration award is exceedingly deferential. Vacatur is available only on very narrow grounds, and federal courts must defer to the arbitrator's decision when possible. An award must be upheld as long as it is rationally inferable from the letter or purpose of the underlying agreement. Even the failure of an arbitrator to correctly apply the law is not a basis for setting aside an arbitrator's award. It is only when the arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable.

*Am. Laser Vision*, 487 F.3d at 258-59 (internal quotation marks and citations omitted). The court continued:

> Vacatur based on an arbitrator's manifest disregard of the law . . . is extremely narrow, insisting on 'more than error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. The arbitrator must appreciate[ ] the existence of a clearly governing principle but decide [ ] to ignore or pay no attention to it. Moreover, once a manifest disregard is established, the court also must find that the award resulted in a significant injustice in order to grant relief.

*Id*. at 259 (internal quotation marks and citations omitted). Arbitrators have broad discretion to make evidentiary decisions. *See Amalgamated*, 481 F.2d at 820. The arbitrator has great flexibility and the courts should not review the legal adequacy of his evidentiary rulings. *See Washington-Baltimore Newspaper Guild v. Washington Post Co.*, 442 F.2d 1234, 1239 (D.C. Cir. 1971); *American Bakery & Confectionery Workers v. National Biscuit Co.*, 378 F.2d 918, 925 (3rd Cir.

1967). *Cf. United Fuel Gas Co. v. Columbian Fuel Corp.*, 165 F.2d 746, 751 (4th Cir. 1948) (determining that arbitrators did not misinterpret the contract or consider improper evidence, but noting that had they done so, this would not vitiate the arbitration award).

A party asserting "manifest disregard" of the law must meet a high standard. The Fifth Circuit applies a two-step test:

> First, where on the basis of the information available to the court it is not manifest that the arbitrators acted contrary to the applicable law, the award should be upheld.

> Second, where on the basis of the information available to the court it is manifest that the arbitrators acted contrary to the applicable law, the award should be upheld unless it would result in significant injustice, taking into account all the circumstances of the case, including power of arbitrators to judge norms appropriate to the relations between the parties.

*Williams v. Cigna Financial Advisors Inc.*, 197 F.3d 752, 762 (5th Cir. 1999) (quoting IAN R. MACNEIL, ET AL., 4 FEDERAL ARBITRATION LAW § 40.7.2.6, at 40:95 (Supp.1999) (footnote omitted)).

## Analysis

### Petitioner's Claim for Vacatur on the Statutory Ground That the Arbitrators Exceeded Their Powers under the FAA and Texas Law

Petitioner relies upon the following provision of the Arbitration Agreement in its argument that the arbitrators exceeded their powers: "Nothing contained in this Agreement will be deemed to give the arbitrator any authority, power or right to alter, change, amend, modify, add to or subtract from any of the provisions of this Agreement." (Pet's App. 187-88.) Petitioner contends that the Panel exceeded its authority by ignoring two "conditions precedent" to the January 27, 2005 Letter Agreement. Petitioner claims that pursuant to the Letter Agreement, it was not required to pay for repairs to the Slope unless such repairs were "otherwise called for in the PSA." It claims that since

9

it had no obligation "otherwise as called for" in the PSA, the arbitrators' Award effectively altered, changed, amended modified, added to or subtracted from certain of the PSA's provisions, thus exceeding the arbitrators' powers. (*Id*.)

District Courts resolve all doubts in favor of the arbitration when deciding whether an arbitration panel exceeded its authority. *Executone*, 26 F.3d at 1320-21 (citing *Valentine*, 981 F.2d at 213.) The question is "whether the award, however arrived at, is rationally inferable from the contract." *Am. Laser Vision*, 487 F.3d at 259 (internal quotation marks and citations omitted). The record shows that the award meets this test. Under Alabama law, the Panel was required to determine if the parties' agreement was ambiguous. *See McDonald v. United States Die Casting and Dev. Co*., 585 So. 2d 853, 855 (Ala. 1991). Finding that it was, the Panel considered parole evidence and decided that Petitioner's arguments regarding the PSA and Letter Agreement were not well taken. The Panel found that the parties mutually assented to the Letter Agreement and intended to vary and modify the PSA:

> Claimants sustained their burden of proof establishing a mutual assent to Respondents' new obligation to 'pursue and complete any and all work required to correct and stabilize the slope." (Recognized at that time to be a design problem) with 'all costs associated with the work' to be 'Seller's sole responsibility" . . . Respondent knew when it signed the letter agreement that it was undeniably essential to change the design of the slope and that the cost was likely or at least potentially in excess of $500,000, yet it agreed to such language as 'all work required to correct' and at 'all costs.'

(Resp't App., Tab A at 5.) The Panel's construction of the letter agreement does not exceed its powers under the Arbitration Agreement. Petitioner's disagreement with the Panel's construction of the Letter Agreement, which did not adopt the construction Petitioner urged, does not prove the Panel exceeded its authority. *Am. Laser Vision*, 487 F.3d at 260; *see also Apache Bohai*, 480 F.3d 397, 405 (5th Cir. 2007) (" '[I]t is the arbitrator's construction which was bargained for; and so far

as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different than his.' ") (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598-99 (1960)). Petitioner has not shown that the Panel modified the parties' agreement or exceeded its authority under the FAA or Texas law. Petitioner's claim that the arbitrators exceeded their powers is without merit.

### Petitioner's Claim That There Was "Evident Partiality Or Corruption" Evidenced by the Arbitrator Selected by Respondents

The Panel consisted of three arbitrators, one chosen by each of the parties and a third arbitrator selected by the two previously chosen arbitrators. The Panel's decision was two to one in favor of Respondents, with the arbitrator chosen by Respondents and the arbitrator selected by the other two arbitrators constituting the majority. Petitioner claims that "(1) Respondents themselves–and not just their lawyers–contacted [the arbitrator]; (2) such contacts may have begun as early as July 18, 2006–*over one full year before the arbitration hearing in this case*; (3) Respondents' counsel visited the Inverness Heights Shopping Center in Hoover, Alabama on August 1, 2006, accompanied by an unknown third party; (4) Respondents' counsel repeatedly provided documents and engaged in lengthy communications with an unnamed third party." Petitioner speculates that the "unnamed third party" redacted from Respondents' itemized legal fee statements was the arbitrator selected by Respondents. Based on this speculation, Petitioner claims that it was incumbent on the arbitrator to disclose the nature and extent of his communications with Respondents and their counsel at the time Respondents advised Petitioner that they had selected the arbitrator to serve. Petitioner alleges that the arbitrator was included in months of strategic planning and preparation of the arbitration by Respondents and their legal team, transforming the arbitrator from a "non-neutral," i.e., an arbitrator chosen by one of the parties to the arbitration, to an

11

"advocate." Petitioner believes that redacted billing statements and a trade magazine article provide a good faith basis for its allegations. Petitioner requested, but was denied, discovery on this basis.

"Neither the FAA nor the Supreme Court, nor predominant case law, nor sound policy countenances vacatur of FAA arbitral awards for nondisclosure by an arbitrator unless it creates a concrete, not speculative, impression of bias." *Positive Software*, 476 F.3d at 286. "The draconian remedy of vacatur is only warranted upon nondisclosure that involves a significant compromising relationship." Petitioner falls far short of this standard. At best, none of Petitioner's allegations of arbitrator misconduct is anything more than pure speculation. In connection with Petitioner's request for discovery and the arbitrator's and Respondents' motions for protection and to quash subpoenas, this Court reviewed the unredacted billing statements, and the affidavits submitted in connection with the motions. (Ord. of June 26, 2008.) The "unnamed third party" mentioned in "visit to the sight" and the "numerous communications" is not an arbitrator. The record contains absolutely no suggestion of impropriety on the part of Respondents, Respondents' counsel, or the arbitrator and no good faith basis for permitting Petitioner discovery on this issue. Petitioner's claim that there was "evident partiality or corruption" on the part of one of the arbitrators should be denied as frivolous.

### Petitioner's Claim that the Panel Manifestly Disregarded Alabama Contract Law

Petitioner claims that the Panel identified the correct legal standard for interpreting contracts under Alabama law, including whether and when to consider extrinsic evidence to interpret ambiguous terms, but disregarded that law. (Amend. Pet. at 25, doc. # 14.) Petitioner argues that the Panel "used parol evidence adduced during the hearing to 'determine the intent of the parties' to an unambiguous agreement, thereby ignoring or paying no attention to the parole evidence rule.

12

(*Id.*) Petitioner claims the Panel "ignored the overwhelming weight of authority supporting [its] defenses, including without limitation the failure by Respondents to demonstrate that the conditions precedent to [its] performance under the January 27, 2005 Letter were met, the failure of consideration of that very document, and the enforceability of the PSA's many liability limitations and/or exclusions. *Id*.

In response, Respondents contend that "in the Arbitration Agreement, [Petitioner] had agreed to provide the arbitrators with substantial discretion in evidentiary and law matters." (Resp't Reply Br. at 4, doc. #17.) Respondents note the Agreement "expressly states that the arbitrator may 'dispense with *any* formal rules of evidence' and 'act upon his understanding or interpretation of the law on *any* issues without the obligation to research the issue or accept or act upon briefs of the issue prepared by any party.'" (*Id.*) According to Respondents, the Panel could consider parole evidence irrespective of Alabama law. (*Id.*) However, Respondents also argue that ambiguity of the contract is a question of law for the panel to decide, citing *Smith v. Ledbetter*, 961 So.2d 141, 144 (Ala. Civ. App. 2006) (concluding that the contract language was ambiguous, even though both parties argued that the language was "clear and unambiguous"); *Childersburg Bancorporation v. People's Bank*, 962 So.2d 248, 255 (Ala. Civ. App. 2006) (describing the court's first step as assessing whether the contract is ambiguous, even where both parties maintained the contract was clear and unambiguous). *Id.* at n.5.

Respondents are correct that under Alabama law, the question whether a contract is ambiguous is a question of law for the courts (and hence the arbitrators). *McDonald*, 585 So. 2d at 855. The Panel determined that the Letter Agreement was ambiguous, stating in the reasons for its decision: "The language of the letter agreement, without resort to parol evidence, is reasonably

subject to conflicting interpretation of each party, and accordingly, pursuant to Alabama law, evidence was received to determine the intent of the parties." (Resp App. at Tab A at 5.) Thus, the Panel considered Petitioner's arguments that parole evidence was not admissible under Alabama law, rejected those arguments based upon its own finding that, as a matter of law, the contract was ambiguous, and held a full and fair hearing in which it admitted extensive parol evidence offered by both sides to the controversy. Petitioner has not shown that the applicable legal principle is clearly defined and not subject to reasonable debate and the Panel refused to heed that legal principle. The Panel clearly believed and, in fact, correctly held that it was for the Panel and not for the parties to decide whether the contract was ambiguous and parole evidence was admissible. Under the deferential review standard for an arbitration award, the Court may not "second-guess multiple, implicit findings and conclusions underpinning the award," or "decide if the award was free from error." *Am. Laser Vision*, 487 F.3d at 260. Even if the Panel wrongly decided that the contract was ambiguous and mistakenly admitted and considered parole evidence, this is not grounds for vacatur. (*Id.*) The record does not show that the Panel recognized the applicable law and then ignored it. *See Williams*, 197 F.3d at 762. Petitioner failed to convince the Panel that Petitioner's construction of the parties' agreements was correct. Petitioner does not come close to establishing any willful disregard of well defined, explicit, and clearly applicable Alabama law by the Panel. *See Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 381-82 (5th Cir. 2004). In urging vacatur, Petitioner relies upon the same arguments that it made to the Panel, in effect, asking this Court to second-guess the Panel's decision. Even if the first part of the test for "manifest injustice" were met, Petitioner has not shown that the arbitration resulted in a significant injustice. This Court has considered all the circumstances of the case, including the Panel's power to judge norms appropriate

to the relations between the parties and finds that upholding the award would not result in significant injustice. Contrary to Petitioner's assertions, the award in this case is not the kind of extraordinary award that leads to the conclusion that the majority of the Panel was "dispensing [its] own brand of industrial justice." *See Am. Laser Vision*, 487 F.3d at 258-59. The parties were aware of the advantages and disadvantages to contracting for private resolution of a dispute. This Court cannot change the agreement to arbitrate and conduct the *de novo* review that Petitioner contracted away. Petitioner's claims that the Panel's decision was based upon a "manifest injustice" are without merit.

## RECOMMENDATION

Petitioner's Amended Petition to Vacate the Arbitration Award, filed November 9, 2007, should be DENIED. Respondents' Motion to Confirm Arbitration Award, filed October 11, 2007, should be GRANTED.

Signed July 16, 2008.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## **INSTRUCTIONS FOR SERVICE AND**
## **NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).